*985 Opinión de conformidad emitida por el
Juez Asociado Se-ñor Martínez Torres,
a la cual se unieron el Juez Presi-dente Señor Hernández Denton y los Jueces Asociados Señores Kolthoff Caraballo y Estrella Martínez.
¿Es necesaria la prestación de fianza para apelar una orden de desahucio en los casos en que se reconoce al de-mandado un crédito por mejoras realizadas a la propiedad en controversia? Luego de evaluar el asunto detenida-mente, opino que la ley no crea excepción para no prestarla ante un escenario como este. Por ello, procede su prestación.
I
Los hechos que dan base a esta controversia son relati-vamente sencillos. El Sr. Oscar Acosta Rodríguez se dedica a la venta de equipo agrícola y arrendamiento de locales comerciales. Según surge de las determinaciones de hechos del foro primario, en noviembre de 1997 el Sr. Luis Armando Ghigliotti Lagares, contratista de profesión, co-menzó a utilizar la parte posterior del negocio del señor Acosta Rodríguez como almacén para su equipo. El señor Acosta Rodríguez nunca cobró al señor Ghigliotti Lagares un canon de arrendamiento por utilizar esa área. Tras uti-lizarla por casi dos años, a mediados de 1999 el señor Acosta Rodríguez requirió al señor Ghigliotti Lagares que abandonara el lugar pues construiría allí un taller. Sin embargo, le ofreció como opción un predio de terreno que tenía frente a su negocio. Le indicó que de querer utilizarlo, de-bían otorgar un contrato y establecer un canon de arrendamiento. El señor Ghigliotti Lagares aceptó la oferta y se mudó al nuevo local. Antes de otorgarse el con- *986 trato, en diciembre de 1999, niveló el terreno e instaló una verja de alambre eslabonado a su alrededor.
Posteriormente, en enero de 2000 las partes intentaron suscribir un contrato de arrendamiento, pero no se con-sumó porque el señor Ghigliotti Lagares estaba inconforme con algunos de sus términos. A pesar de que el contrato no se otorgó, las partes llegaron a unos acuerdos con relación al canon de arrendamiento e incluso en febrero de 2000, el señor Ghigliotti Lagares pagó al señor Acosta Rodríguez las mensualidades de enero y febrero de ese año, más un mes adicional de depósito.
El 18 de abril de 2000 las partes otorgaron el contrato. En él se pactó que el arrendatario no podría efectuar me-joras al terreno en cuestión, a menos que obtuviera per-miso previo y por escrito del arrendador. Asimismo, se acordó que de realizar mejoras de carácter permanente sin el permiso correspondiente, estas quedarían a beneficio del arrendador, quien no tendría que pagar valor alguno por ellas.
El señor Ghigliotti Lagares pagó el canon de arrenda-miento ininterrumpidamente, durante más de siete años. No obstante, en noviembre de 2007 dejó de hacerlo. Enton-ces, el 18 de diciembre de 2008 el señor Acosta Rodríguez presentó una demanda de desahucio en contra del señor Ghigliotti Lagares. Oportunamente, este último contestó la demanda y reconvino. En su comparecencia, no evidenció haber hecho pago alguno respecto a los cánones de arren-damiento atrasados. A su vez, adujo que conforme al Art. 297 del Código Civil, 31 L.P.R.A. see. 1164, podía retener la propiedad hasta que se le indemnizaran las mejoras reali-zadas al local comercial antes de que las partes otorgaran el contrato.
Durante el trámite del caso ante el foro primario, el se-ñor Ghigliotti Lagares solicitó que el proceso de desahucio se tramitara por la vía ordinaria. Para ello argüyó que existía un conflicto de título. Se fundamentó en nuestros *987 pronunciamientos en C.R.U.V. v. Román, 100 D.P.R. 318 (1971). Tras varios trámites procesales, el juicio comenzó. En la primera vista, el tribunal declaró “sin lugar” una moción de sentencia sumaria que presentó el señor Acosta Rodríguez y aclaró que el trámite del caso varió, por lo que se llevaría por la vía ordinaria.
Tras evaluar el testimonio de las partes, el foro primario emitió sentencia en la que condenó al señor Ghigliotti La-gares a desalojar la propiedad arrendada. Asimismo, le or-denó pagar $11,275 por cánones de arrendamiento atrasa-dos y $3,000 en honorarios de abogado. Por su parte, el foro primario concluyó que el señor Ghigliotti Lagares tenía de-recho a una indemnización de $6,077.95 por las mejoras realizadas a la propiedad antes de la otorgación del contrato. En la sentencia, el foro primario no reconoció directamente al señor Ghigliotti Lagares como un constructor de buena fe.
Finalmente, el Tribunal de Primera Instancia advirtió al señor Ghigliotti Lagares que si deseaba apelar la sentencia, tendría que prestar una fianza como dispone el Art. 631 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2832.
Inconforme con esa determinación, el señor Ghigliotti Lagares apeló y presentó una moción en auxilio de juris-dicción ante el Tribunal de Apelaciones. En esencia, argüyó que no le correspondía prestar fianza para apelar, pues durante el juicio el tribunal varió el trámite del caso de un desahucio sumario a un pleito ordinario. Discutió, además, que el Art. 631 del Código de Enjuiciamiento Civil, supra, “forma parte del andamiaje procesal del procedimiento de desahucio sumario que el Tribunal expresa y reiterada-mente dispuso que no aplicaba al caso”. (Enfasis suprimido). Apéndice, págs. 24-25. Añadió que en la sen-tencia se le reconocieron derechos como constructor en suelo ajeno, por lo que en virtud del Art. 297 del Código Civil, supra, tenía derecho a retener el terreno hasta que se le indemnizara lo invertido. *988 El señor Ghigliotti Lagares imputó al Tribunal de Pri-mera Instancia errar al no reconocerlo como un constructor de buena fe con derecho a ser indemnizado conforme dis-pone el Art. 297 del Código Civil, supra, y al no ordenarle al señor Acosta Rodríguez escoger entre uno de los reme-dios dispuestos en ese artículo previo a desahuciarlo. Asi-mismo, argüyó que el foro primario erró al no permitirle presentar prueba sobre el costo de reproducción, menos de-preciación, según la etapa de construcción en que se encon-traban las obras que había realizado para diciembre de 1999. Finalmente, razonó que al haberse tramitado el caso por la vía ordinaria, el foro primario se equivocó al orde-narle otorgar fianza o consignar los cánones de arrenda-miento como requisito para apelar.
El foro apelativo intermedio declaró “no ha lugar” a am-bos recursos por falta de jurisdicción. En esencia, el Tribunal de Apelaciones concluyó que un
... examen de las disposiciones del artículo 631, supra, y nues-tra jurisprudencia, no hace distinción alguna en cuanto a que. el requisito de fianza sea por razón de que el pleito sea trami-tado de forma ordinaria. La razón para ello consiste en que el requisito de fianza, en estos casos, no existe para garantizar únicamente los pagos adeudados sino también los daños resul-tantes de mantener congelado el libre uso de la propiedad afectada mientras se dilucida la apelación. Crespo Quiñones v. Santiago Velázquez, supra. En su consecuencia, este foro ape-lativo carece de jurisdicción para entender en los méritos del recurso ante nuestra consideración, por lo que procede la des-estimación del recurso. Apéndice, págs. 21-22.
Insatisfecho una vez más, el señor Ghigliotti Lagares presentó ante este Tribunal una moción en auxilio de juris-dicción acompañada de una petición de certiorari. Eva-luada la moción en auxilio de jurisdicción, la declaramos “con lugar” y paralizamos los efectos de las sentencias dic-tadas por los foros inferiores. De igual forma, concedimos diez días al señor Acosta Rodríguez para que mostrara causa por la cual no debíamos expedir un auto de certiorari y revocar la sentencia del Tribunal de Apelaciones. En *989 cumplimiento con nuestra orden, el señor Acosta Rodrí-guez compareció.
Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.
II
A. El desahucio es un procedimiento especial de natu-raleza sumaria cuya finalidad es recuperar la posesión de una propiedad inmueble mediante el lanzamiento o expul-sión del arrendatario o precarista que la detente. Mora Dev. Corp. v. Sandín, 118 D.P.R. 733 (1987). Se trata de “uno de los procedimientos más utilizados en nuestro país para reivindicar, mediante trámite y juicio sumario, la po-sesión y el disfrute de un inmueble”. Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234-235 (1992).
El Código de Enjuiciamiento Civil es el cuerpo legal que articula las normas vigentes sobre esta acción. 32 L.P.R.A. 2821 et seq. Con relación al proceso de apelación de un desahucio, la Ley de Desahucio contiene un procedimiento especial. Específicamente, el Art. 631 del Código de Enjui-ciamiento Civil, supra, estatuye que
[n]o se admitirá al demandado el recurso de apelación si no otorga fianza, por el monto que sea fijado por el [tribunal] para responder de los daños y perjuicios que pueda ocasionar al demandante y de las costas de apelación; pudiendo el de-mandado, cuando el desahucio se funde en falta de pago de las cantidades convenidas, a su elección, otorgar dicha fianza o consignar en Secretaría el importe del precio de la deuda hasta la fecha de la sentencia.
En Crespo Quiñones v. Santiago Velázquez, 176 D.P.R. 408, 413-414 (2009), señalamos que este requisito
... es jurisdiccional en todo tipo de pleito de desahucio, aun si no se funda en falta de pago. Blanes v. Valldejuli, 73 D.P.R. 2, 5 (1952). La razón es obvia: la fianza no existe para garantizar únicamente los pagos adeudados, sino también los daños re- *990 sultantes de mantener congelado el libre uso de la propiedad afectada mientras se dilucida la apelación. (Enfasis nuestro).
Como podemos observar, contrario a los requisitos para apelar en otros procesos, la apelación de un desahucio re-quiere como requisito jurisdiccional la prestación de fianza o la consignación del importe del precio de la deuda hasta la fecha de la sentencia. Acorde con el Art. 630 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2831, esa fianza debe otorgarse dentro del término de treinta días que se tiene para apelar. “Por lo tanto, si el demandado no presta la referida fianza ni consigna los cánones adeudados cuando el desahucio se funde en la falta de pago, el Tribunal de Apelaciones no adquiere jurisdicción para atender el recurso de apelación”. (Enfasis nuestro). Crespo Quiñones v. Santiago Velázquez, supra, pág. 414.
Un análisis del Art. 631 del Código de Enjuiciamiento Civil, supra, revela sin ambages que el legislador no hizo diferencia entre tipos de desahucio a la hora de requerir fianza. Del legislador entender que la prestación de fianza admitía excepción, así lo hubiese plasmado. Es norma rei-terada que “[a]l interpretar un estatuto, la intención legis-lativa debe ser buscada en el lenguaje usado en él con la ayuda que permiten las reglas de hermenéutica legal. Pero un lenguaje nuevo o una disposición enteramente nueva no se puede leer en el estatuto para darle un significado que no está incluido en él”. (Enfasis nuestro). Alonso García v. S.L.G., 155 D.P.R. 91, 108 (2001). Véanse, además: Guz-mán v. Calderón, 164 D.P.R. 220, 257—258 (2005) (Opinión de conformidad del Juez Asociado Señor Rivera Pérez, a la cual se unieron los Jueces Asociados Señores Rebollo López y Corrada del Río); Meléndez v. Tribunal Superior, 90 D.P.R. 656, 662 (1964). Véase, además, R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, pág. 311.
*991 Sabido es que “[l]a jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias”. S.L.G. Solá-Moreno v. Bengoa Becerra, 182 D.P.R. 675, 682 (2011). Véase, además, Asoc. Punta las Ma-rías v. A.R.Pe., 170 D.P.R. 253, 263 esc. 3 (2007). Por ello, la ausencia de jurisdicción
trae consigo las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste abrogár-sela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del proce-dimiento, a instancia de las partes o por el tribunal motu proprio. S.L.G. Solá-Moreno v. Bengoa Becerra, supra. Véanse, además: González v. Mayagüez Resort & Casino, 176 D.P.R. 848, 855 (2009); Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997).
Así, cuando un tribunal determina que no tiene jurisdic-ción, “está obligado a desestimar el caso”. S.L.G. Solá-Moreno v. Bengoa Becerra, supra. Su ausencia es insubsanable. Íd., pág. 683.
A través de los años hemos sido enfáticos en cuanto al requisito jurisdiccional estatuido en el Art. 631 del Código de Enjuiciamiento Civil, supra. Unicamente accedimos a eximir a una parte demandada de esa exigencia estatuta-ria en Bucaré Management v. Arriaga García, 125 D.P.R. 153 (1990). En ese caso resolvimos que un demandado cuya probada insolvencia económica ha sido reconocida por el tribunal conforme con la Ley Núm. 6 de 26 de junio de 1980, está exonerado de otorgar fianza o consignar el im-porte del precio de la deuda hasta la fecha de la sentencia como condición previa para poder instar un recurso de re-visión en una acción de desahucio.(1) Nuestro proceder en *992 ese entonces tuvo un fin legítimo. Entendimos que con esa excepción “le impartimos un sentido lógico al procedi-miento y le damos vigencia real a la intención legislativa que plasma la política pública de reconocerle un interés particular y otorgarle derechos distintos a los indigentes que están sujetos a una acción de desahucio”. Íd., pág. 154. Fundamentándonos en nuestros pronunciamientos en Molina v. C.R.U.V., 114 D.P.R. 295 (1983), concluimos que en un pleito de desahucio el requisito de prestación de fianza o consignación de cánones adeudados impone al deman-dado insolvente una condición imposible de cumplir. Bucaré Management v. Arriaga García, supra, pág. 158. A parte de esa instancia, hasta hoy, no hemos reconocido una excepción adicional al requisito de prestación de fianza o consignación de cánones adeudados para apelar una sen-tencia de desahucio.
B. El 9 de marzo de 1905 nuestra Asamblea Legisla-tiva promulgó la “Ley Estableciendo el Procedimiento para el Desahucio y Fijando Reglas para Apelaciones en esta Clase de Juicios”. Esa ley es “una copia virtual de los artí-culos 1559 y siguientes del Código de Enjuiciamiento Civil Español”. Más et al. v. Borinquen Sugar Co., 18 D.P.R. 304, 314 (1912). Por consiguiente, ello trae consigo la presun-ción de que nuestra Legislatura tuvo la intención de adop-tar dicha ley con la interpretación que le ha dado el Tribunal Supremo de España. Íd. Como siempre, tendremos presente que “[c]uando una de nuestras instituciones derive de determinada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en esta jurisdicción, sin ol-vido de desarrollos valiosos en otros sistemas, aunque su- *993 jeto siempre a las realidades específicas de nuestro medio”. Pueblo v. Rivera Cintrón, 185 D.P.R. 484, 490 (2012), ci-tando a Peña Clos v. Cartagena Ortiz, 114 D.P.R. 576, 588 (1983). Véase, además, Bernier y Cuevas Segarra, op. eit., pág. 451. Así pues, veamos el análisis que los tratadistas españoles han dado al requisito de prestación de fianza o consignación para apelar en casos de desahucio.
Manresa comenta que la Ley de Enjuiciamiento Civil española de 1855 tenía el defecto de que cuando la de-manda se fundaba en cualquier otra causa que no fuera el cumplimiento del término estipulado en el contrato, aun-que fuese la de falta de pago, el juez tenía que convocar a las partes a un juicio verbal. En él, regularmente la parte contra quien se solicitaba el desahucio no convenía en los hechos para que se tuviera que desviar el proceso a la vía ordinaria.
Explica Manresa que
[b]ien pronto comprendieron los inquilinos y arrendatarios de mala fe que esa disposición de la ley les facilitaba el medio de seguir ocupando la finca por muchos meses y aun por años, utilizándose de ella sin pagar la renta al propietario, puesto que con sólo negar los hechos en que se fundaba la demanda, ó no conformarse con ellos, se convertía el juicio en pleito ordi-nario y no podían ser lanzados mientras no recayese sentencia firme. En este punto quedó tan desamparado el derecho de los propietarios como lo estaba anteriormente, y para poner á ese mal el remedio que reclamaba la opinión pública y era de jus-ticia, se promulgó la ley de 25 de Junio de 1867. Por ella se reformaron los arts. 638, 639, 640, 662, 663, 667, 669 y 672 de la ley de Enjuiciamiento [de 1855], ampliando y determinando las causas que dan lugar al desahucio, y ordenando un proce-dimiento breve y sencillo con términos improrrogables para el caso en que el demandado no conviniera en los hechos; y para cortar de raíz el abuso antes indicado, se ordenó que no se admitiera al demandado el recurso de apelación, ni el de casa-ción en su caso, si no acreditaba al interponerlo haber satisfe-cho los plazos vencidos y los que debiera pagar adelantados, según el contrato de arriendo. (Enfasis nuestro). J.M. Manresa y Navarro, Comentarios a la Ley de Enjuiciamiento Civil re-formada, 3ra ed., Madrid, España, Imprenta de la Revista de Legislación, 1910, T. VI, pág. 6.
*994 La jurisprudencia española ha establecido tres puntos fundamentales tras el requisito para apelar. Estos son:
1. El pago o consignación de las rentas vencidas previo a la interposición del recurso y necesario para la sustanciación del mismo no constituye un mero requisito formal, sino una exi-gencia esencial para el acceso y la sustanciación de los recursos. Su finalidad es la de asegurar los intereses del arrendador que ha obtenido una sentencia favorable y evitar que el arrendatario se valga del recurso para dejar de satisfa-cer la renta durante la tramitación del mismo —es decir, evi-tar que instrumentalice el proceso como una maniobra dilatoria.
2. Tal requisito, aunque permite una interpretación automá-tica y rigurosa que lleve a considerar inescindible la exigencia del pago o consignación de las rentas y la simple acreditación, debe, sin embargo, interpretarse de manera finalista o teleo-lógica, de modo que no convierta en obstáculo insalvable el incumplimiento involuntario y no malicioso de requisitos formales.
3. La repetida interpretación teleológica obliga a distinguir entre el hecho del pago o consignación, que asegura los inte-reses del arrendador, y la acreditación de ese pago o consigna-ción, que constituye un simple requisito cuyos eventuales de-fectos son susceptibles de subsanación. Manuel Albaladejo y otros, Comentarios al Código Civil y compilaciones forales, 3ra ed., T. XX, Vol. 1-B, Madrid, Rev. Der. Priv./Edersa, 1997, pág. 1311. Véanse, además: Sentencia del Tribunal Constitucional de España 131/1993; Sentencia del Tribunal Constitucional de España 87/199; Sentencia del Tribunal Constitucional de Es-paña 115/1992; Sentencia del Tribunal Constitucional de Es-paña 104/1984; Sentencia del Tribunal Constitucional de Es-paña 51/1992.
Por su parte, Julio J. Tasende Calvo comenta sobre el recurso de apelación en la Ley de Enjuiciamiento Civil es-pañola de 2000,(2) que
[l]a acreditación del pago de las rentas para recurrir en los procesos arrendaticios (Art.449.1 LECiv(3) ... que se aplica *995 tanto al recurso ordinario de apelación como a los extraordi-narios por infracción procesal o casación, no afecta en realidad a todos los procesos arrendaticios, sino solamente a aquellos en los cuales la sentencia estimatoria lleva aparejado el lan-zamiento del arrendatario demandando, siendo, en consecuen-cia, de aplicación en todos los supuestos en los que se ejercite la acción resolutoria del contrato, con independencia de que la causa invocada sea o no la falta de pago de la renta .... (Énfa-sis nuestro). J.J. Tasende Calvo, Algunas cuestiones sobre el recurso de apelación en la Ley de Enjuiciamiento Civil de 2000 (RCL 2000, 34 y RCL 2001, 1892), Actualidad Jurídica Aran-zadi Núm. 529, Pamplona, Editorial Aranzadi, 2002.
Añade que, “por el contrario, no será [necesaria la pres-tación de fianza] cuando el objeto del proceso sea simple-mente la reclamación de las rentas adeudadas o la deter-minación de su importe”. Tasende Calvo, supra.
En el caso ante nuestra consideración, el peticionario, como subterfugio para no pagar fianza, arguye que al ser reconocido con derecho a una indemnización por las mejo-ras realizadas a la propiedad inmueble, tiene un derecho de retención que lo exime del requisito estatuido en el Art. 631 del Código de Enjuiciamiento Civil, supra. Aduce que resulta un absurdo jurídico que si a una persona se le re-conoce un derecho a retener una cosa, luego por una dispo-sición procesal se le requiera la prestación de una fianza para responder de los daños que ocasione retener la pro-piedad mientras apela. Petición de certiorari, pág. 16. Se-gún esa premisa, concluye que la disposición del Art. 631 del Código de Enjuiciamiento Civil, supra, tiene perfecto *996 sentido para los precaristas demandados que no tienen tí-tulo o justificación alguna para retener la cosa mientras apelan la sentencia. Entiende que no tiene lógica jurídica alguna que se le condicione su apelación al cumplimiento de unos requisitos cuya razón de ser son contrarios a su derecho de retención.
No tiene razón. “La obligación pues, de acreditar tener satisfechas las rentas vencidas y las que deba pagar ade-lantadas, para que sea admisible el recurso de apelación ... se impone tan sólo al que sea demandado en concepto de arrendatario ó inquilino, y se ha de cumplir cualquiera que sea la causa del desahucio ....”. Manresa y Navarro, op. cit., págs. 29-30. Por eso,
[c]uando el desahucio se dirija contra el administrador, encar-gado, guarda ó portero de la finca, ó contra el que la tenga en precario, como la ley da por supuesto que ninguno de éstos paga renta ó merced, sería absurdo exigirles lo que en [el Art. 631 del Código de Enjuiciamiento Civil, supra] se previene, íd., pág. 29.
A igual conclusión llega José Alfredo Caballero Gea, al exponer que
[e]l Tribunal Supremo [español] ha declarado con reitera-ción que el precepto es de tal modo taxativo que la falta de este presupuesto es causa de nulidad de la admisión del recurso, nulidad que puede ser declarada de oficio; pero que no es apli-cable a los desahucios en precario, pues la referida obligación no puede existir cuando la demanda se dirija contra quienes no estén ligados con el actor por ningún título arrendaticio. No existiendo renta resultaría absurdo exigir en ningún momento al demandado que acreditase su pago o que la consignara. (Enfasis nuestro). J.A. Caballero Gea, El desahucio por preca-rio: problemática judicial, Pamplona, Ed. Aranzadi, 1983, pág. 300.
En este caso, el señor Ghigliotti Lagares tenía un título de arrendamiento que lo relacionaba con el señor Acosta Rodríguez. En la sentencia del foro primario se determinó que ese contrato estaba vencido y que el arrendatario no pagaba la renta convenida. Al apelar esa decisión, el señor *997 Ghigliotti Lagares cuestiona su desahucio por virtud del supuesto derecho de retención que alegó que le favorecía y el cambio del trámite a la vía ordinaria. La doctrina revela que los requisitos que impone la ley para apelar en los casos de desahucio no hace distinción a si el trámite se llevó a cabo por la vía ordinaria o extraordinaria. Es decir, la prestación de fianza procede siempre que lleve “apareja-do el lanzamiento del arrendatario demandado, siendo, en consecuencia, de aplicación en todos los casos en los que se ejercite la acción resolutoria del contrato, con independen-cia de que la causa invocada sea o no la falta de pago de la renta”. Tasende Calvo, supra. Distinto sería si el deman-dado solo reclamara la indemnización que aduce que le corresponde. En esa situación, según la glosa citada, no procedería el pago de fianza pues el objeto del proceso sería simplemente la reclamación de un importe.
Según se desprende del Art. 631 del Código de Enjuicia-miento Civil, supra, el requisito de prestación de fianza no admite excepción más allá que la indigencia. Crespo Quiñones v. Santiago Velázquez, supra, pág. 415. Con la pro-puesta que hace el peticionario, el tribunal apelativo ten-dría que dilucidar los méritos de cada caso para auscultar si procede o no la prestación de fianza. Adviértase que en su sentencia el Tribunal de Primera Instancia no reconoció directamente al señor Ghigliotti Lagares como un constructor de buena fe con derecho a retención. Precisamente, ese es uno de los errores que este plantea ante el foro apelativo intermedio. Entiendo que el propósito que motivó la impo-sición de una fianza para apelar no permite que la alega-ción de un alegado derecho de retención por las mejoras hechas al terreno se exima a un demandado en un caso de desahucio de su obligación de prestar una fianza. Un vis-tazo al Art. 637 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2838, revela que
[72]o será un obstáculo para el lanzamiento el que el inqui-lino reclame como suyos labores, plantíos o cualquiera otra *998 cosa que no se pueda separar del inmueble', pero, cuando me-diare contrato oral o escrito de aparcería agrícola y éste se alegare y probare dentro del juicio, no se procederá en ningún caso al lanzamiento sin que medie una tasación y el pago de los sembrados o plantíos pendientes de recolección, debiendo justipreciarse y compensarse éstos, de acuerdo con el dicta-men de un tasador, que nombrará el juez del tribunal que tenga jurisdicción en el asunto. Si las partes así lo desearen, nombrará cada una su perito tasador quienes deberán rendir informe en un término de cinco (5) días, el cual una vez apro-bado por el tribunal, servirá de base para efectuar la compensación.
Aunque ese artículo no va dirigido al requisito de pres-tación de fianza o consignación, de él se desprende la in-tención legislativa de prohibir que un demandando en un caso de desahucio arguya que no procede su lanzamiento por poseer en el inmueble, entre otras cosas, algo que no se puede separar de él. Al interpretar este artículo, la casuís-tica española ha expresado que la realización de mejoras en un inmueble
... no puede determinar la inviabilidad del ejercicio de la ac-ción de desahucio, en cuanto en las específicas normas de eje-cución de la sentencia estimatoria de dicha acción la Ley Pro-cesal prevé tal eventualidad, estableciendo un trámite para salvaguardar los derechos del desahucio. Así, el artículo 1600 [Art. 638 del Código de Enjuiciamiento Civil nuestro] pro-clama con rotundidad que “no será obstáculo para el lanza-miento que el inquilino o colono reclame como de su propiedad labores, plantíos o cualquier otra cosa que no se pueda separar de la finca”. Sentencia Núm. 163/1996 de 11 de junio (AC/ 1996/1221).
Similares expresiones ha hecho Manresa al explicar el propósito del Art. 1600 del Código de Enjuiciamiento Civil español (Art. 638 nuestro). En particular, ha declarado que ese artículo sirve para que cuando dentro del término se-ñalado un inquilino no haya desalojado un inmueble, se proceda a lanzarlo, “sin prórroga ni consideración de nin-gún género y á su costa, y sin que sirva de obstáculo la reclamación de labores, plantíos, obras, ó cualquier otra *999 cosa que no se pueda separar de la finca, y que el desahu-ciado pretenda ser de su propiedad, ó que deben abonársele”. Manresa y Navarro, op. cit., pág. 55.
De lo anterior se colige que el legislador previo en la ley especial de desahucio que un demandado pudiese traer como argumento un supuesto derecho de retención por me-joras u otras cosas realizadas en el terreno. Claramente, el Art. 637 del Código de Enjuiciamiento Civil, supra, cerró esa posibilidad. Si no se pueden oponer mejoras realizadas al terreno para impedir el lanzamiento, mucho menos se pueden invocar para eximir del pago de fianza en apelación. Aplica el principio de hermenéutica de que los tribunales debemos “armonizar hasta donde sea posible to-das las disposiciones de ley envueltas en el caso con miras a lograr un resultado sensato, lógico y razonable que repre-sente la intención del legislador”. Bernier y Cuevas Sega-rra, op. cit., pág. 245.
Un examen del recurso ante nuestra consideración re-vela que el señor Ghigliotti Lagares no prestó fianza en apelación contra la sentencia que ordenó su desahucio, ni consignó el monto de la deuda por los cánones de arrenda-miento no pagados al señor Acosta Rodríguez. Ante el in-cumplimiento con el requisito jurisdiccional de prestación de fianza, el foro apelativo intermedio solo tenía poder para declararse sin jurisdicción y desestimar el recurso. Carattini v. Collazo Syst. Analysis, Inc., 158 D.P.R. 345 (2003). Es decir, no podía, como sugiere implícitamente el peticionario, entrar a dilucidar los méritos de la controver-sia para auscultar si tenía jurisdicción. En todos los casos que hemos tenido controversias relacionadas a nuestra ju-risdicción, como primer paso en la metodología de análisis auscultamos si tenemos jurisdicción antes de entrar en los méritos de la controversia. A manera de ejemplo, véanse: Lozada Sánchez et al. v. JCA, 184 D.P.R. 898 (2012); Asoc. Fotoperiodistas v. Rivera Schatz, 180 D.P.R. 920, 936 (2011); González v. Mayagüez Resort & Casino, supra, pág. *1000 856; Torres v. Toledo, 152 D.P.R. 843, 852 (2000) (Sentencia); Esquilin v. Alcalde Mun. de Carolina, 150 D.P.R. 204, 207 (2000); Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997); González Santos v. Bourns P.R., Inc., 125 D.P.R. 48, 63 (1989).
En síntesis, consentir a la propuesta del peticionario significaría retroceder más de un siglo y obviar el texto del Código de Enjuiciamiento Civil español, pieza legislativa que adoptamos con su interpretación. Peor aún, ocasiona-ría que tengamos ante nuestros tribunales múltiples plan-teamientos para obviar el requisito de prestación de fianza y frustraría las múltiples enmiendas que la Asamblea Le-gislativa le ha hecho a la Ley de Desahucios para agilizar su trámite. Así, es improcedente el argumento del peticio-nario de que posee un derecho de retención sobre el inmue-ble en cuestión que le exime de prestar fianza para apelar.
Por todo lo anterior, estoy conforme con la Sentencia del Tribunal.

 La Ley Núm. 6 de 26 de junio de 1980 enmendó los Arts. 623 y 635 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sees. 2824 y 2836, con el propósito de que se *992 notificara a los Secretarios del Departamento de la Vivienda y del entonces Depar-tamento de Servicios Sociales, hoy Departamento de la Familia, toda acción y sen-tencia que ordenara el desahucio de una familia de insolvencia económica. Asimismo, estatuyó que no se puede ordenar el lanzamiento de ninguna familia a menos que esté presente un funcionario del entonces Departamento de Servicios Sociales. Estos artículos fueron posteriormente enmendados por la Ley 197-1998. En esencia, esta ley sustituyó “Departamento de Servicios Sociales” por “Departamento de la Fami-lia” y “Ley de Enjuiciamiento Civil” por “Reglas de Procedimiento Civil”.

 Ley Núm. 1 de 7 de enero de 2000 (RCL 2000, 34, 962 y RCL 2001, 1892).

 Art. 449. Derecho a recurrir en casos especiales
“1. En los procesos que lleven aparejado el lanzamiento, no se admitirán al demandado los recursos de apelación, extraordinario por infracción procesal o casa- *995 ción si, al prepararlos, no manifiesta, acreditándolo por escrito, tener satisfechas las rentas vencidas y las que con arreglo al contrato deba pagar adelantadas.
“2. Los recursos de apelación, extraordinario por infracción procesal o casación, a que se refiere el apartado anterior, se declararán desiertos, cualquiera que sea el estado en que se hallen, si durante la sustanciación de los mismos el demandado recurrente dejare de pagar los plazos que venzan o los que deba adelantar. El arren-datario podrá adelantar o consignar el pago de varios períodos no vencidos, los cuales se sujetarán a liquidación una vez firme la sentencia. En todo caso, el abono de dichos importes no se considerará novación del contrato.”
Este artículo fue modificado por el Art. 4.8 de la Ley Núm. 37 de 10 de octubre de 2011 (RCL 2011 1846). Los párrafos citados no sufrieroncambios con la modificación.